Mr. Ruccovino, I am pleased to report that this is a bankruptcy appeal of complicated facts and complicated law, including the intersection of patent law. I am going to try to argue why there is a simple reason that the Court must vacate the District Court's opinion, which is that the District Court collaterally attacked the Bankruptcy Court's final orders. If the Court agrees with me, then the Court certainly can go on to look at any other matter in the record. It can affirm on any other matter, but I would urge the Court not to do so because of the My client, RPD, is a good-faith bankruptcy purchaser. We purchased assets out of multiple bankruptcy estates. We paid well over half a million dollars cash and millions of dollars more in release of secured claims. Although we did not know it at that time, we were purchasing a license from Tech Pharm. Tech Pharm is a licensor of a patent. The facts are unfortunate, really, because what you have here is mistakes all around. You have the debtors, 10 companies that filed bankruptcy, all interrelated companies that did not list this license as an asset. You had selling trustees, good-faith people acting in good faith, selling property of the bankruptcy estates, but they didn't know that this license existed. They had no personal knowledge because the debtors didn't list them. And then you had my client, the buyer, purchasing assets to run this onsite system, and we didn't know that we were purchasing these assets. So, point one, neither they nor we are at fault here for what happened today, a lack of everyone knowing what was going on. Point two, as we talk about the bankruptcy court's orders and what the trustees did, in no way, shape, or form should my client be blamed for any deficiencies, as it appears to me that the lower courts have. It is the trustees' burden as the seller to obtain a court order, to propose a court order, to comply with due process. It is not our burden as the buyer to come into court and prove anything. We pay money, and we get the benefit of bankruptcy court orders. On that point, Chapter 7 only works, as this court has repeatedly held, because good-faith buyers come in there and have faith that their sale will be upheld, have faith that they will not become embroiled in litigation. And that's exactly what happened to us, and instead of being protected by the bankruptcy court, we were, in many respects, humiliated by the bankruptcy court and blamed for what happened here. And that sends a wrong message to everyone. Everyone that's going to participate in bankruptcy sales, including all of my future clients, are going to know that, wait, you've got to hedge your bets. You've got to pay less. You've got to be careful because of what happened here. This is not an appeal about facts, but I have to give you some facts to phrase the overall questions. Years ago, before my client came in, there was litigation between TechFarm, the licensor, and all these 10 companies. And that litigation involved TechFarm's patent on a method patent for remotely dispensing pharmaceuticals. It's a really neat technology. It's the wave of the future. It is machines inside of prisons or nursing homes, highly secure machines, which remotely process and dispense control pharmaceuticals. And they held a method patent on that. So there was this lawsuit as to whether the debtors were violating the patent, and the debtors counterclaimed that the patent was invalid. And there was a final settlement, a final settlement and a dismissal with prejudice. And part of that settlement was this license. And the debtor system was called onsite. So my client, again, came in there and purchased all of these goods related to onsite. Now another principle of bankruptcy law is what is an executory contract? The bankruptcy code deals differently with sales of a book, let's say, or executory contracts and intangible rights. If this is an executory contract, if this license is an executory contract, then it can either be rejected or assumed and assigned. Here, the bankruptcy court ruled against us. The bankruptcy court ruled, oh, and I forgot to mention that some two years after we purchased all this, we come to be sued in Texas state court by the licensor as though there had been no bankruptcy, there had been no sale, and the licensor basically says, we don't know who these people are, they're infringing our patent. Fine. Fine. We go to the bankruptcy court and we say, judge, we have four final non-appealable orders to say that we own this, that we purchased this. The bankruptcy court first rules that no, you did not purchase this asset. The bankruptcy court then rules that this was an executory contract that was rejected, even though no one knew about it, by operation of law, and therefore could not be assumed and assigned. And the bankruptcy court ruled many other things. The district court on appeal ruled on one thing and one thing only. The district court ruled that this was an executory contract that was deemed rejected and therefore could not be assumed and assigned to my client. The district court ignored that there are three final non-appealable bankruptcy court orders that say, with no ambiguity, that to the extent this is an executory contract, it is assumed and assigned. Those are final orders that cannot be collaterally attacked. Right or wrong, many cases from this court, from the Supreme Court, have made it clear that a bankruptcy court order, even if it has errors of law, once it's final and non-appealable, cannot be collaterally attacked. You either need to seek direct relief from that order, or the order needs to be enforced as written. So the district court right there, Your Honors, erred as a matter of law. And right there, this court should vacate the district court and remand for further proceedings so that the district court can consider all of those other issues that would then guide or benefit this court in any future review. Now, Tech Farm, they can't really attack the logic of what I just said or the wisdom of what I said, because it's black-letter law. Black-letter law. So Tech Farm raises two issues. They say, first, RPD waived these arguments. RPD waived these arguments, but not raising them below. I cite Your Honors to 421 of the record, that's the pretrial order, where we preserved this in the pretrial order. We say, however, each of the court's underlying orders provide that without determining whether there are any assets or executory contracts, to the extent they are, such contracts are assumed and assigned. That this may allegedly be a wrong conclusion, a fact or law, does not matter. So we preserved it. Now, we preserved it also at trial. The bankruptcy court in her oral ruling said, and I quote, this is Record 850, she says, but in the spirit of sometimes stuff happens, I admit that I signed an order here that purported to permit assumption and assignment as an alternative remedy of what may have been an executory contract that had been deemed rejected. Well, that's just wrong, and it shouldn't have been in there. The bankruptcy court admitted that she might have made a mistake. And it's also preserved on appeal to this court, where we say that the district court erred in affirming the bankruptcy court's decision, et cetera, et cetera, that if the license was an executory contract that was being rejected, that the district court erred because assuming that to be true, there were nevertheless these three final and non-appealable bankruptcy court orders. So the waiver argument fails. The next argument is due process. Tech Farm says, well, we did not have notice of those three sales. That is a stronger argument because it is true. There is no evidence that Tech Farm had notice of those three sales. I'll get to why that might not matter. But again, the remedy then is for Tech Farm to seek relief under Rule 60B. The Supreme Court has said that where there is a denial of due process, you must go in and you must seek relief under 63. I'm sorry, under Rule 60B. You can't just go to any old court and say, well, I didn't have due process, therefore court ignored this order. Let's think about the GM case or the Chrysler case where parties came in and bought GM and bought Chrysler, and they had an order that said you've purchased everything, and someone comes before some board of labor relations in Michigan or some court in California or some court in Egypt and argues, well, we didn't have notice, and therefore this order is invalid. That is not how the due process of law works. You go to the issuing judge and you say, issuing judge, your order is void as against me because I did not have due process. And then the issuing judge interprets his or her own order. You do not, again, collaterally attack orders, and you do not seek relief on due process bases in front of other courts. So Tech Farm had a remedy that it did not avail itself of, and why did it not avail itself of that? Because it would have bore the burden of proof and persuasion. There are many ways to have notice of bankruptcy, and I will submit that in this very small market, someone at Tech Farm at some point probably learned of the bankruptcy case. Tech Farm submitted no evidence at trial that it did not have notice of the bankruptcy case. There was some evidence as far as the mailbox rule that I'll talk to about in a minute, but Tech Farm never put on any evidence to submit or to evidence any kind of Rule 60B analysis. Secondly, as this court has held, a denial of due process requires prejudice. You have to be prejudiced. Sometimes courts make mistakes, and sometimes participants in court proceedings make mistakes, but if it's a trivial error, if it does not affect the property right, if you are not prejudiced, then sorry, but no foul. Here, this license is assignable. This license is assignable if the counterparty, the assignee, agrees to be bound by it. That's all my client wants. My client wants to be a good citizen. It wants to comply with this license. It wants to pay per machine. It wants to give reports. So this license is assignable, regardless of whether it's an executory contract, regardless of whatever else may have happened. So if there was a violation of due process, the bankruptcy court did nothing more than what the license provides for. So for those reasons, Your Honors, one, the very fact that we are in possession of three final and unappealable court orders merits a vacature, and two, if the court considers this due process argument, there is no evidence in the record that Tech Farm put on to justify any kind of due process argument, irrespective of the Rule 60B standard and the due order and the due process of law. One more thing that Tech Farm did have notice of, and I think this is very important. So we talked about the three sales. There was a separate proceeding sometime later where my client became embroiled in litigation with another secure creditor regarding the merits of our respective liens, and we entered into a comprehensive settlement, including with various other trustees. At that point in time, we all learned about the existence of Tech Farm, and at that point in time, I personally told those trustees that were now party to the settlement, when you file your motion to approve the settlement with the bankruptcy judge, serve it on Tech Farm. And they did. Tech Farm, it was served at Tech Farm's president's office. He testified that he did not get that. Well, point is, there are certificates of service, and there is evidence and there is proof that that motion was placed in the U.S. Mail. Under the mailbox rule, that means that there is a presumption that it arrived, and you cannot overcome that presumption by getting on the witness stand and saying, I didn't get it. There has to be something more. There has to be, well, there was a fire. There was a strike. I had a crook as a secretary who stole my mail. An airplane went down with the U.S. Mail. You can't just say I didn't get it. Point being, as a matter of law, Tech Farm received that motion. That motion contained with it a settlement agreement that the bankruptcy court made a part of its order. And that settlement agreement, part of what it did was it split the 10 licenses with our enemy, this other secure creditor. And that settlement agreement said, RPD, my client, has already received and has purchased three of these license agreements. Tech Farm could have come in there and objected. They could have come in there and sought again rule 60B relief. That is a final finding in a final non-appealable bankruptcy court order that says, my client has already received three of these licenses with service to Tech Farm. And that's important because my client had received three licenses already. The balance of the licenses were split with our arch nemesis, this other secure creditor. Had Tech Farm come in there and said, hey, guys, what are you doing? My client might not have been out the half a million dollars. My client might have said, whoa, let's split these remaining licenses differently so that I certainly get one. But again, they sat back for a year and a half, almost two years, before they took action. And as a result now, my client has paid over half a million dollars cash, millions of dollars of secured claims waived. My client has been engaged in this business and has invested millions of dollars more. And now years later, we're sued and someone wants to take away our license. Exactly what Chapter 7 is designed to prevent against. All other things being, if someone must suffer a forfeiture here, Your Honors, it should not be my client. My client was not responsible for any of these faults. My client paid in good faith. My client is the beneficiary of final bankruptcy court orders. And again, all that my client wishes to do is to comply with the very license that Tech Farm voluntarily entered into. All right. While you still have time, so let me ask you to summarize. You've made a lengthy argument today and in your brief. Encapsulate for us specifically, in summary, where it is that you think Judge Fitzwater went wrong here. I don't mean that you haven't already explained that, but essentially, he's a very fine and experienced district judge. So what was it, do you think, that he fundamentally misunderstood that, in your view, caused him to commit reversible error? Yes, Your Honor. Judge Fitzwater is a very fine judge that gave us oral argument, and I have nothing but good things to say about him. He saw that this bankruptcy appeal had all these thorny issues, matters of first impression, and with due respect, I think he looked for a clean way to affirm the bankruptcy judge. So he said this was an executory contract that was deemed rejected and therefore could not have been sold. It went poof, if you will. What Judge Fitzwater omitted was the fact of those three final bankruptcy court orders that say that to the extent this is an executory contract, it's assumed and assigned to my client. There was no discussion of that fact by Judge Fitzwater. I just think he missed it. So that encapsulates the argument. That's why this ruling should be vacated and reversed back to Judge Fitzwater. So, unfortunately, he has to consider some of those other issues. Thank you. You've answered my question, which I appreciate, and you saved time for rebuttal. Thank you, Mr. Bukovina. Mr. Brannick. Good afternoon, Your Honors. Nicholas Brannick of Kohlschatz PC on behalf of Tech Farm, the FLE. I want to begin with this argument about collateral attack. That argument has no legs. There was no collateral attack here. RPD is candidly ignoring how this case got to the bankruptcy court, why this case got to the bankruptcy court, and conjuring up a collateral attack that never happened. What happened here was Tech Farm filed an action in Texas State Court to terminate the license. That action was filed against the parties to the license, not RPD, the entities that became the debtors. And RPD then intervened in that case and removed the case to the bankruptcy court. RPD then filed a brief in the bankruptcy court on the question of subject matter jurisdiction and said repeatedly to the bankruptcy court, bankruptcy court, interpret your own orders to find that we acquired the license. The bankruptcy court itself in the transcript at Record 817 expressly understood what she was being asked to do. She said, Mr. Rukavina, counsel for RPD, removed the state court action because RPD felt like the judge who had authorized the sales should decide what was or wasn't sold, not some state court judge who didn't have any familiarity with the case. More to the point, all the orders that RPD is relying on have a clause in them saying that the bankruptcy court reserved jurisdiction to interpret its own orders, and that is all that the bankruptcy court did here. The bankruptcy court looked at the asset purchase agreements or the settlement agreement. The bankruptcy court looked at its own orders, and the bankruptcy court said, no, RPD, you didn't buy this license under any of those instruments or orders. RPD stands up and says, well, these orders transferred the license to us. That's fundamentally not true, and it's fundamentally not true for several reasons. We can start with the fact that as Judge Hauser and Judge Fitzwater both correctly concluded, the license was rejected as a matter of law under Section 365d.1 before any of these sale orders or the settlement order was entered. There is no way under the bankruptcy code as a matter of law for a trustee to assume and assign an executory contract that has been rejected. Under this court's precedent, Garfinkel, Austin Development, and the unreported CIT case, the more recent case, this court has repeatedly held that when a contract is rejected under 365 of the bankruptcy code, it is removed from the bankruptcy estate. The trustee lacks any control or authority over assets that are removed from the bankruptcy estate. And so when these orders that RPD is relying on were entered, there was no license left in the estate for these trustees to transfer or sell. And so when RPD gets up and says these are these sacrosanct orders that transferred us the license and they were being attacked and it's all unfair, none of that is true. And that's exactly what Judge Hauser found and exactly what Judge Fitzwater found. Now, Judge Fitzwater admittedly, and I think correctly, took the path of least resistance because once you conclude that these were executory contracts and once you conclude that they were rejected by operation of law and once you realize that the trustee can't assume and assign these things once they've been rejected, there's nothing more to debate here. And candidly, if this court agrees with Judge Fitzwater on those points, then the simple fact is that his decision should be affirmed. RPD spends a lot of time talking about due process. And admittedly, due process issues were raised below. And due process issues were raised below because it's fundamental in the bankruptcy code that contract counterparties are entitled to notice if their contracts are going to be assumed and assigned. It's in Rule 6006 of the Bankruptcy Rules. And so that's why the issue of due process was raised. However, Judge Hauser never ruled on the question of due process. There's no decision below for this court to reverse, remand, or do anything with because in footnote 11 of her opinion, Judge Hauser says, Tech Farm raised these questions of due process. I don't need to touch them. And so there's really no reason for this court to consider them either because frankly Tech Farm wins regardless of the due process questions. They're simply not relevant on this appeal. Excuse me. I want to talk a little bit about the settlement. The settlement agreement was between RPD, an entity called CERX, and several trustees. However, none of the trustees who signed that settlement agreement were the trustees from whom RPD claims to have received the license. The trustees who were—the trustees, the estates that RPD claims to have received the license from were the Waco Estate, the Western Pennsylvania Estate, and the Grapevine Estate. None of those trustees were party to that settlement agreement. Nevertheless, the parties to that settlement agreement added a parenthetical that said that RPD is entitled to licenses that it previously acquired, such as those from Waco, Western Pennsylvania, and Grapevine. Then they had a clause in the order the bankruptcy court signed that the parties drafted saying that the terms of the settlement agreement are incorporated into the order. And so RPD says, well, look, the bankruptcy court made a fining effect that we got these licenses from these prior sale orders. The bankruptcy court promptly rejected that argument. In fact, it was rather appalled at the notion of parties slipping parentheticals into asset purchases agreements and then slipping incorporations— incorporating those facts into an order. But there's an actual legal reason why this could never have happened, and it's fairly simple. In order for Judge Hauser to have found in the settlement order that her prior orders sold the license to RPD, somebody has to have filed a motion under Bankruptcy Rule 7052, which is essentially a Civil Rule 52, to modify the findings of fact and conclusions of law in those prior orders. Nobody did that when the settlement motion was filed. And that has to have been filed under Bankruptcy Rule 7052 within 14 days of the order being entered. Well, no motion was ever filed to modify those prior orders, and by the time Judge Hauser entered the settlement order, the 14 days had lapsed. And under this court's decision in the Texas extrusion case, this court held that the bankruptcy court lacked jurisdiction to make additional findings of fact and conclusions of law in the prior sale orders. So purely as a matter of law, RPD's argument is wrong. RPD—Mr. Rucavina made a statement that may have been a mistake, I'm not sure, but he said that when the motion went out, it contained the settlement agreement. That's actually not true. When the motion went out, it had a little footnote in there that said, the settlement agreement's big, we're not sending it to you, contact us if you want it. The only way for my client, Tech Farm, to have ever discovered that RPD was purporting to obtain the license through this parenthetical would have been to go back and ask the trustees for the settlement agreement. So, in fact, there was no notice that the license was purportedly being transferred to RPD through the settlement because it's never mentioned in the motion, and nobody bothered to send RPD or anybody else the settlement agreement. I think I've covered the issues that Mr. Rucavina raised. I'm not sure if the panel has specific questions. If we do, we'll let you know. Okay. I just wanted to pause there because I've said a lot. One issue I want to pause on because it was raised in RPD's reply, and it's simply wrong as a matter of law. RPD argues that the license wasn't executory because it was embodied in a settlement agreement, and the settlement agreement settled this underlying patent litigation. And RPD argues that there's something special about a method patent that distinguishes it from all other case law from the Federal Circuit, such as aspects, eyewear, and mentor graphics, where the Federal Circuit has said that dismissing an infringement claim with prejudice in one case doesn't bar future infringement claims that couldn't have been brought in that case. RPD argues in its reply, well, there's something special about method patents, and go look at this case called Hulco Manufacturing from 2001. Well, Hulco Manufacturing actually doesn't support RPD's position, and it doesn't do so for several reasons. Number one, the patent issue in Hulco Manufacturing wasn't a method patent. It was a patent for the design of conveyor belts that were put on trucks. It wasn't a patent for the method of putting the conveyor belt on the truck. It was for the actual design of the conveyor belt, so it wasn't a method patent. Number two, the issue in Hulco Manufacturing was not whether a party like Tech Farm could bring a future infringement claim. The issue in Hulco was whether a party like the debtors in the underlying patent litigation could bring a future invalidity claim once they had settled litigation where they were arguing that the patent was invalid. In other words, once you agree to dismiss with prejudice a claim that the patent's invalid, you can't just turn around and say it's invalid again in another litigation. That's what Hulco is about. But more to the point, what RPD apparently missed was that in the Mentor Graphics decision decided just last year by the Federal Circuit, at the end of the decision, the Federal Circuit distinguishes Hulco by name specifically on this point and disagrees with what RPD is trying to do with Hulco. The Federal Circuit said no, Hulco and our law, our precedent, is not that dismissal with prejudice of an infringement claim, not an invalidity claim, an infringement claim, bars future infringement claims that couldn't have been brought in the original action. So RPD's whole argument as to why the license wasn't executory, even if you can sort of pretend the license didn't exist within its own document, fails as a matter of law. At this point, Your Honors, I don't think I have anything further to add. All right. Thank you, Mr. Brannon. Mr. Kavina, you've saved time for rebuttal. Thank you, Your Honors. Opposing counsel, if he is right about everything, did not respond to my argument. My argument, again, is that I have three final non-appealable orders that say to the extent that any of the subject property is an executory contract, the same is hereby assumed by the estate and immediately assigned to RPD under the applicable provisions of Section 365 of the Bankruptcy Code, it is true that we asked a bankruptcy judge to interpret her prior order. The bankruptcy judge interpreting her, and she ruled against us, on the interpretation of that order as to whether we purchased this asset or not, that is a qualitatively different thing, Your Honors, from Judge Fitzwater completely ignoring these orders. Perhaps this was an executory contract. Perhaps Judge Fitzwater is right. That makes my case easier. Because, again, these orders say if it is an executory contract, it's assumed and assigned. No relief, Your Honors, from these orders was ever sought. Judge Fitzwater, for reasons that I do not understand, either forgot that these orders existed or decided that they weren't binding. The only way that he could decide that they were not binding was on some due process ground. But opposing counsel conceded, as he has to, that the bankruptcy court never made a finding on due process. She found that she does not have to rule on due process. So if there is a due process defense to these orders, then that defense, there's no finding of fact from any court on which that defense can be based. And with due respect, I don't think this court can make a finding of fact by scouring the record, nor should this court. The fact remains that Judge Fitzwater, the district court here, for reasons that I do not understand, completely ignored three final orders, never mind the fourth order that defines in hindsight that we had assumed these three contracts. Opposing counsel is correct. The motion he mentioned, the settlement motion that they were served with, he's correct. The settlement agreement itself did not go with that motion. However, sophisticated parties, when they get a bankruptcy motion, and they say that you can get a settlement agreement if you ask, should ask. Moreover, that motion, Your Honors, it's in the record at 1194, says on the second page, tech farm licenses are being assumed and assigned. Because the court can't affirm on any grounds, I have to spend just two minutes talking about the broader issues. Issue number one, the bankruptcy court ruled that we did not buy this asset because the seller didn't know about it and the buyer didn't know about it. Bankruptcy court is wrong as a matter of Texas law. Texas law governs property rights. And in my Rule 28J statement, there's a case that's directly on point from the Supreme Court of Texas earlier this year that has this exact same issue where a debtor sells a contract that no one knows exists to a buyer, and 20 years later there's an argument as to whether they bought it, and the Supreme Court of Texas says you bought it. It doesn't matter that the seller and the buyer didn't know about it. Issue number two, the bankruptcy court said that our asset purchase agreement didn't include this license by name. That's true, it didn't. But it said that we are purchasing any other potential licenses related to on-site. Judges, on-site is how the pharmaceuticals are dispensed. This is a license. Any other potential license. And the use of the word potential proves that the trustee, like any good trustee, and the buyer know that there are perhaps other assets, and they want to encapsulate everything. And issue number three, can an unknown executory contract be rejected? Well, again, if this is an executory contract, the bankruptcy court has found it's assumed. She could have made error of law. She said she made error of law, but unfortunately or fortunately, bankruptcy law is replete with cases from this court and the Supreme Court where bankruptcy courts make mistakes, but it's final. There's a discharge of student loan debt, final. There's a third-party injunction to where you lose your lawsuit, final. You have to come to bankruptcy court. You have to assert your rights. But if the court looks at that issue, can an undisclosed, unknown executory contract be deemed rejected as a matter of law? That's the big ticket issue in this case. That's the one that there's really no law on. Opposing counsel is wrong that there's law from this circuit or anyone else on it. This is a matter of true first impression. I would argue that Section 554 of the Bankruptcy Code that there's a direct conflict here. 554 says that assets that are not scheduled remain property of the estate in perpetuity. So you can't have, on the one hand, an executory contract that's not scheduled be gone from the estate, and on the other hand, 554 says that unknown assets remain in perpetuity. Because there's a conflict, the court can reconcile it. The court should reconcile it equitably. It is unequitable, inequitable to penalize everyone because some debtor, for reasons unknown, or some debtor's lawyer, for reasons we can all figure out, forgets to list an executory contract on his schedules. And maybe it's not even an executory contract. Thank you, Your Honors. All right, thank you, Mr. Rucavina. Your case.